December 21, 1979

## 79-88  MEMORANDUM OPINION FOR THE DIRECTOR, UNITED STATES WATER RESOURCES COUNCIL

### Department of Transportation Act of 1966 (49 U.S.C. § 1656(a))—Water Resources Council— Calculation of Primary Direct Navigation Benefits of a Water Resources Project (§ 7(a) of the Act)

This responds to your request for our opinion whether the factors set forth in the formula for determining the primary direct navigation benefits of a water resource project, second paragraph of § 7(a) of the Department of Transportation Act of 1966, 49 U.S.C. § 1656(a) (1976), are exclusive. Your question, as we understand it, is whether the Water Resources Council (Council) may provide in its standards and criteria for economic evaluation of water resource projects that factors in addition to those specifically set forth in the formula may be considered in the determination of primary direct navigation benefits. With the caveats that the formula does not address costs or benefits other than primary direct navigation benefits, we believe that its factors are exclusive. Therefore, the Council may not adopt standards and criteria directing such benefits to be calculated in a manner different from that dictated by the formula.

Section 7(a) provides, in relevant part:

> The standards and criteria for economic evaluation of water resource projects shall be developed by the Water Resources Council established by Public Law 89–80. For the purpose of such standards and criteria, the primary direct navigation benefits of a water resource project are defined as the product of the savings to shippers using the waterway and the estimated traffic that would use the waterway; where the savings to shippers shall be construed to mean the difference between (a) the freight rates or charges prevailing at the time of the study for the movement by the alternative means and (b) those which would be charged on the proposed waterway; and where the estimate of traffic that would use the waterway will be based on such freight rates, taking into account projections of the economic growth of the area.

The language concerning primary direct navigation benefits is clear. The benefits "are defined as" and the definition that follows is set out in a formula precise enough to be reduced to a mathematical statement. Thus, "Primary Direct Navigation Benefit = Traffic (Prevailing Nonwater Rates minus Projected Water Rates)."[1] We do not know of any principle of statutory construction permitting the Council to vary so unambiguous a definition by adding to it, unless its legislative history were to show unequivocally a contrary intent on the part of Congress. The legislative history shows the opposite.

The definition of primary direct navigation benefits was added to S. 3010, 89th Cong., 2d sess. (1966) by amendment of the Senate Committee on Government Operations, after its hearings on that bill. As introduced, S. 3010 and the corresponding House bill H.R. 13200, 89th Cong., 2d sess. (1966), would have allowed the Secretary of Transportation, after consultation with the Water Resources Council, to establish the standards and criteria for economic evaluation of the transportation aspects of water resource projects.[2] The proposal, placing such authority in the Secretary rather than the Council, and permitting the executive rather than the Congress to establish the standards and criteria for economic evaluation of navigational benefits, encountered a hostile reception at both the House and Senate hearings from interested witnesses and communicants and also

---

[1] The term "estimated traffic" is not precisely defined by the statute. It is an estimate that must take into account both the water rates and the projected economic growth in the area to be served by the water project. In addition, it must apparently also include the projected useful life for the transportation facilities of the project. During the Senate hearings some dissatisfaction was expressed concerning a then-recent decision of the Corps of Engineers to reduce from 100 years to 50 years the life expectancy of transportation-related water resource projects for the purpose of calculating cost-benefit ratios. *Hearings on S. 3010 before the Senate Committee on Government Operations* (Part 4), 89th Cong., 2d sess. 654 (1966) (Statement of Senator Mundt). However, section 7(a) itself does not establish a lifespan for water transportation facilities.

[2] As originally presented, S. 3010, an Administration bill, provided in its § 7(a), *inter alia,* that:

The standards and criteria for economic evaluation of the transportation features of multipurpose water resource projects shall be developed by the Secretary after consultation with the Water Resources Council, and shall be compatible with the standards and criteria for economic evaluation applicable to nontransportation features of such projects. [Senate Hearings, *supra* (Part 1) at 21.]

The House version, as introduced as H.R. 13200, 89th Cong., 2d sess. (1966), contained identical language. Creating a Department of Transportation: Hearings on H.R. 13200 before the House Committee on Government Operations (Part 1), 89th Cong., 2d sess. 20 (1966). The bill H.R. 15963, as reported out by the House committee, contained no mention of standards and criteria for economic evaluation of multipurpose water resource projects, except to exempt such projects from the jurisdiction of the Secretary of Transportation for such purposes. Among the stated reasons for striking the language, was that "[t]he committee has been informed that the Committee on Public Works of the House of Representatives is now considering whether to hold hearings dealing with the evaluation of benefits in connection with inland waterway projects." H. Rept. 1701, 89th Cong., 2d sess. 18 (1966) (House Report).

from a number of Members of Congress. Hearing on S. 3010 before the Senate Committee on Government Operations, 89th Cong., 2d sess. *passim* (1966) (Senate Hearings); Creating a Department of Transportation: Hearings on H.R. 13200 before the House Committee on Government Operations, 89th Cong., 2d sess. *passim* (1966) (House Hearings). The Senate Committee took cognizance of these objections.

At the Senate hearings a number of witnesses and several Senators pointed out that on November 20, 1964, the Corps of Engineers, at the direction of the Bureau of the Budget, had modified the existing formula for computing primary direct navigation benefits. Previously, the Corps of Engineers determined savings to shippers by comparing the anticipated water rate to the prevailing rates charged on other modes of transportation at the time of the determination. The new method involved comparing the water rate to projected rates which the competing modes of transportation could be expected to adopt to meet the competition from the water project. It was pointed out to the Senate committee, and noted, *e.g.,* 112 CONGRESSIONAL RECORD 24375 (1966) (remarks of Senator McClellan), that no proposed water project had met the test of the new formula since its issuance in 1964. Although the committee was informed, during the pendency of the hearings (*see* Senate Hearings (Part 3) at 474 (remarks of Senator Harris)), that the Bureau of the Budget had reconsidered and reinstated the pre-1964 formula, it decided, in the words of its report, to "establish a definition of primary direct navigation benefits of water resource projects, thus restoring the criteria followed by the Corps of Engineers prior to November 1964, when the Bureau issued new criteria for the evaluation of such projects." S. Rept. 1659, 89th Cong., 2d sess. 13 (1966) (Senate Report). The committee "deemed" such a definition "necessary in order to insure that future projects will be evaluated on the same basis as those which have resulted in the development of this Nation's outstanding system of inland navigation which has served so well in peace and war." Senate Report at 14. The intent of the committee and the Senate is best summed up by a statement made during the floor debate by Senator Jackson, a member of the Senate Committee on Government Operations and a supporter of the committee amendment:

> We have not only negated the 1964 directive of the Bureau of the Budget but *we have, by statute, also written into section 7 what the criteria are, should be, and must be,* in connection with water navigation projects. Much of that, in the past, has been of a policy nature. We have now, by statute, made clear that we insist the policy be that of the executive branch prior to the directive of the Bureau of the Budget of 1964. [112 CONGRESSIONAL RECORD 24380 (emphasis added).]

Nothing else in the legislative history of the definition indicates that the Senate intended it to be interpreted differently. Rather, the hearings, the debate, and the Senate report all confirm that Senator Jackson's interpretation of the Congressional intent underlying the definition is the correct one.

The version of the Transportation Act that passed the House did not contain a definition of primary direct navigation benefits.[3] The conference committee, however, adopted the Senate definition without modification. H. Conf. Rept. 2236, 89th Cong., 2d sess. 27 (1966). Nothing further in the conference report, or in the House debate, indicates that the House interpreted the definition any differently than the Senate.

In sum, the legislative history demonstrates that Congress intended to establish by statute the pre-1964 method for computing primary direct navigation benefits so that the executive could not vary it. Congress believed that the formula set forth in § 7(a) specified this method. Thus, any attempt to vary that formula by adding extraneous factors would violate not only the text of § 7(a), but also its intent—that of freezing the definition of primary direct navigation benefits as it existed (in Congress' interpretation) prior to November 1964.

The definition speaks only to primary direct navigation benefits and it is silent concerning the method for determining other benefits of multipurpose water resource projects and for determining costs. It is clear from the legislative history that Congress realized that primary direct navigation benefits were not the only benefits associated with most water resources projects.[4] Thus, the definition in the second paragraph of § 7(a) does not prevent the Council from considering, in establishing its overall standards and criteria for economic evaluation of water resource projects, other benefits in addition to primary direct navigation benefits.[5]

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] *See* n. 2, *supra.*

[4] We have reviewed the legal memorandum prepared by the National Wildlife Federation in 1977 which you made available. We believe that the cited evidence does not support an opposite conclusion but only establishes that Congress recognized other types of benefits.

[5] For examples of recognized benefits of water resource projects that are not classified as primary direct navigation benefits, *see* S. Doc. 97, 87th Cong., 2d sess. 8–10 (1962), a document entitled "Policies, Standards, and Procedures in the Formulation, Evaluation, and Review of Plans for Use and Development of Water and Related Land Resources." This document, prepared by the President's Water Resources Council, was mentioned frequently during both the House and Senate hearings and is alluded to in the House Report.